**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **1. SAMUEL SOTO, JR.,** )<br>)<br>**Plaintiff,** )<br>**v.** )<br>)<br>**1. GENUINE PARTS COMPANY a/k/a GPC d/b/a NAPA AUTO PARTS, and** )<br>**2. NATIONAL AUTOMOTIVE PARTS ASSOCIATION, LLC d/b/a NAPA a/k/a NAPA AUTO PARTS,** )<br>)<br>**Defendants.** ) | **CIV-26-3292-J**<br><br>**JURY TRIAL DEMANDED**<br>**ATTORNEYS LIEN CLAIMED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Samuel Soto, Jr., and for his Complaint against the Defendants, alleges and states as follows:

## PARTIES

1. Plaintiff, Samuel "Sammy" Soto, Jr. ("Plaintiff"), was at all relevant times an adult resident of Oklahoma County, Oklahoma.

2. Defendants are:

   a. Genuine Parts Company a/k/a GPC d/b/a NAPA Auto Parts, an entity doing business in and around Oklahoma County, Oklahoma; and

   b. National Automotive Parts Association, LLC d/b/a NAPA a/k/a NAPA Auto Parts, an entity doing business in and around Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3. This cause of action arises out of Plaintiff's former employment with Defendants and is based on the following claims: (a) disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA") and ADA Amendments Act ("ADAAA"); (b) violations of the Family Medical Leave Act ("FMLA"); (c) age discrimination in violation of Age Discrimination in Employment Act of 1967 ("ADEA"); (d) race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (e) race discrimination and retaliation in violation of 42 U.S.C. §1981; (f) violations of the Employment Retirement Income Security Act ("ERISA"); (g) breach of contract; and (h) failure to pay wages.

4. Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the federal claims, and jurisdiction over them is vested in this Court under 28 U.S.C. § 1367(a).

5. To the extent required, Plaintiff has exhausted his administrative remedies as to the above-listed claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about May 10, 2025. The EEOC issued Dismissal and Notice of Rights letters dated September 3, 2026, which were received by Plaintiff thereafter. This case is timely filed within ninety (90) days of Plaintiff's receipt of his Right to Sue Letters.

6. All acts complained of herein occurred in or around Oklahoma County, Oklahoma. Oklahoma County is located within the Western District of the United States District Court of Oklahoma. Thus, venue is proper in this Court under 28 U.S.C. §1391(b).

**STATEMENT OF FACTS**

7. Plaintiff, who was born in May 1968 and is Hispanic, was employed with Defendants as an Outside Sales Representative (working in Oklahoma) from on or about May 28, 2024, until on or about February 23, 2026.

8. Throughout his employment, Plaintiff was an excellent employee, receiving positive feedback on his performance.

9. On or about June 21, 2025, after a bone marrow biopsy, Plaintiff was diagnosed with Multiple Myeloma, a type of cancer that forms in plasma cells that build up in bone marrow. Treatment requires infusions, chemotherapy, stem cell removal, and bone marrow transplants.

10. Multiple Myeloma causes bone pain, fatigue, nausea, constipation, loss of appetite, weakness, and urinary issues, inter alia.

11. As a result of Plaintiff's medical impairment, he was a qualified individual with a disability, in that, he suffered from a physical impairment that substantially limited his ability to perform one or more major life activities, including but not limited to eating, sleeping, urinating, expulsion of waste, physical exertion, driving, performing various physical tasks, the ability to fight infections, causing nausea and severe fatigue.

12. His impairment also substantially impacted one or more of his internal bodily systems, including but not limited to his digestive, urinary, immune, circulatory, musculoskeletal and lymph systems.

13. Plaintiff also had a record of an impairment and was regarded as disabled.

14. At all times though, Plaintiff was able to perform the essential functions of his job with or without reasonable accommodations.

15. In or around mid-June 2025, Plaintiff notified West Region Senior People Partner Paul Ledesma (who is significantly younger than Plaintiff) and District Manager Chad Mock (Plaintiff's supervisor who is not Hispanic and significantly younger than Plaintiff) of his diagnosis and that he would be starting treatment on or about June 27, 2025.

16. At that time, Plaintiff also asked for information about continuous and intermittent FMLA leave.

17. Defendants failed to engage in an interactive process with Plaintiff.

18. Rather, Kiera (Last Name Unknown) (Employee Services Leave Management Team) told Plaintiff that he needed to apply for FMLA, then Short Term Disability ("STD"), and then Long Term Disability ("LTD").

19. Unfamiliar with the process, Plaintiff followed such directive.

20. Plaintiff was on FMLA from on or about June 27, 2025 until on or about September 18, 2025.

21. He was also on STD through on or about December 25, 2025.

22. On or about November 13, 2025, Plaintiff provided an update on his medical treatment to District Manager Mock. He informed Mock that he would have chemotherapy infusion treatments every day until December 18, 2025.

23. Plaintiff also informed Mock that he had talked to his doctor about returning to work and that once he completed the infusion treatments ending on or about December 18, 2025, his doctor would be able to let him know about returning to work.

24. Mock responded that they are "holding it down" for Plaintiff.

25. On or about December 4, 2025, Plaintiff was hospitalized due to an e-coli infection. He informed Mock of this on or about December 5, 2025.

26. On or about December 15, 2025, as instructed, Plaintiff applied for LTD benefits through New York Life.

27. In or around mid-December 2025, Plaintiff had a conversation with Group Claims Analyst Ashley (Last Name Unknown) at New York Life. She informed Plaintiff that Defendants are known for terminating employees whether LTD benefits are granted or denied.

28. On or about December 23, 2025, Plaintiff informed Mock that his doctor indicated a possible return to work in two (2) months. Plaintiff also told Mock he was giving him this information so he could help Plaintiff keep his job.

29. Plaintiff also informed Mock that he had to apply for LTD benefits because he had been told by Defendants that it was the "next step" in the process. He told Mock that he

was praying to get back to work soon because he enjoys his job and wanted to get back to work.

30. Plaintiff also had a conversation around this time with West Region Senior People Partner Ledesma, informing Ledesma that his STD benefits would be ending on or about December 31, 2025 and that he was waiting for approval of his LTD application.

31. Plaintiff asked Ledesma if he could receive pay for his accrued, unused two (2) weeks of vacation pay.

32. In addition, they discussed the workday calendar, and Ledesma edited it to show Plaintiff working (but on medical leave) through April 2026.

33. In or around January 2026, Plaintiff received payment of his accrued vacation.

34. On or about January 22, 2026, Plaintiff was informed that his LTD benefits were denied based on the insurance company's false statement that his cancer was a "pre-existing" condition.

35. Plaintiff's medical team vehemently disagreed with such a ludicrous statement.

36. On or about January 22, 2026, Plaintiff submitted an appeal of such decision, with supporting medical documentation.

37. On or about February 18, 2026, Plaintiff informed District Manager Mock of the pending appeal of his LTD benefits and his anticipated release to return to work in or around March 2026.

38. On or about February 19, 2026, Plaintiff informed Mock of the denial of the

appeal for his LTD benefits.

39. On or about February 19, 2026, West Region Senior People Partner Ledesma told Plaintiff that Plaintiff was going to be fired allegedly because of the denial of LTD benefits, in spite of the fact that Ledesma said Plaintiff was a good employee.

40. On or about February 23, 2026, Ledesma told Plaintiff it was official that Plaintiff was fired.

41. Plaintiff's termination form is signed by Ledesma.

42. Ledesma also delivered the blow that Plaintiff's health insurance would be ending the same day.

43. Such abhorrent conduct interfered with Plaintiff's ability to receive medical care and treatments, including but not limited to monthly IVIG treatments and heart monitor check-ups/appointments.

44. Plaintiff wanted to find a way to stay employed with Defendants.

45. Ledesma stated that Plaintiff could re-apply for his position, but that he could not guarantee that Plaintiff would be re-hired.

46. Ledesma stated he would check and get back with Plaintiff. However, Ledesma failed to report back to Plaintiff about his ability to be re-hired.

47. On or about February 23, 2026, Plaintiff was released to return to work by his medical team.

48. Plaintiff's doctor's release stated that he needed a few reasonable

accommodations, including but not limited to frequent bathroom visits and avoiding large crowds.

49. Plaintiff stayed in contact with District Manager Mock about his ability to return to work.

50. On or about March 6, 2026, Plaintiff inquired of Mock about returning to work in light of the fact that Ledesma had received Plaintiff's release to return to work. Mock stated he would get with Ledesma and be back in touch.

51. On or about March 17, 2026, Plaintiff informed Ledesma and Mock that the Oklahoma Employment Security Commission ("OESC") had informed Plaintiff that Defendants had stated to the OESC that Plaintiff was a current employee of Defendants who was "on leave."

52. Plaintiff stated that if that was the case, he was ready and willing to return to work.

53. Ledesma responded that Defendants informed the OESC that Plaintiff's employment ended because his LTD was denied and he did not have "ADA or personal leave" available.

54. Significantly, however, the OESC records reflect that Defendants' stated "reason for [Plaintiff's] separation" was "Leave of Absence."

55. On or about March 30, 2026, Plaintiff officially applied for his job which was posted by Defendants.

56. Plaintiff informed District Manager Mock that he had applied.

57. Mock stated he would get with Ledesma about Plaintiff's rehire status (without any reason offered).

58. On or about April 6, 2026, Plaintiff spoke with Mock again, wherein Mock stated he had no update about his rehire status.

59. On or about April 15, 2026, Mock again told Plaintiff that he had no update about Plaintiff's ability to be rehired into his former job.

60. Throughout this time, Defendants wholly failed to engage in an interactive process with Plaintiff.

61. Plaintiff was not rehired.

62. This was so despite the fact that the Store Manager with whom Plaintiff worked expressed that she wanted him to return.

63. Upon information and belief, a significantly younger individual began performing Plaintiff's job.

64. Plaintiff was also treated to less favorable terms and conditions of employment during his tenure as compared to his similarly-situated, younger and/or non-Hispanic co-workers.

65. More particularly, Plaintiff was assigned a more difficult and historically less financially lucrative territory than those similarly-situated co-workers that were significantly younger and/or were not Hispanic.

66. Moreover, in or around late-2024, Plaintiff made repeated efforts to meet with a potential customer. At the customer's location, Plaintiff noticed a number of confederate flags on display, and the potential customer would not meet with Plaintiff when he first attempted to meet with him. Plaintiff made additional efforts to meet with the potential customer on later dates, but he repeatedly declined.

67. In or around March 2025, Plaintiff reported this to District Manager Mock, telling him he felt discriminated against, was treated with disdain and that he felt the potential customer may be racist. However, Mock did not take any remedial action but rather said Plaintiff was "just going to have to deal with it."

68. Plaintiff also made sales on customer accounts for which he was not given credit toward his set sales quotas and for which he was not paid commissions.

69. Such sales were instead credited to Plaintiff's younger and/or non-Hispanic co-workers.

70. By contrast, Plaintiff's similarly-situated, younger and/or non-Hispanic co-workers were not denied credit toward their sales quotas and/or commissions on sales they made.

71. Significantly, as part of his compensation package, Defendants agreed to pay Plaintiff $1,000.00 per month (i.e., $12,000 per year) for meeting (100%) of his monthly sales quotas, as well as an additional $500.00 per month if he exceeded his monthly sales quotas by 10%, i.e., reaching 110% of his monthly sales quota.

72. Defendants further agreed to pay Plaintiff $1,000.00 per month for reaching 100% of his gross profit quota, plus an additional $100.00 for every 1% achieved beyond his gross profit quota.

73. Thus, failing to credit Plaintiff with sales he made deprived him of commissions, i.e., compensation he was due and entitled to receive.

74. Plaintiff complained about this to District Manager Mock, but Mock did not take any remedial action and instead told Plaintiff there was nothing he could do.

75. As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries described hereafter.

## COUNT I: ADA/ADAAA

For his first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

76. The matters alleged above constitute violations of the ADA/ADAAA in the form of disability discrimination and retaliation.

77. Plaintiff was a qualified individual with a disability, in that, he suffers from and/or was regarded as suffering from the impairments described above, which substantially limited one or more major life activities, as set forth above. Further, Plaintiff's disability impacts one or more of his internal bodily processes, as shown herein. And, Plaintiff had a record of disability and was regarded as disabled because he had an actual or perceived impairment at the time Plaintiff was terminated.

78. Despite his actual and/or perceived impairments, Plaintiff was able to perform the essential functions of his job with or without reasonable accommodations at all relevant times hereto.

79. Plaintiff was terminated, and Defendants failed to rehire Plaintiff under circumstances giving rise to an inference of discrimination.

80. The matters alleged above also constitute retaliation in violation of the ADA and ADAAA. Plaintiff is entitled to relief because he is a qualified individual with a disability; he engaged in protected activity by requesting reasonable accommodations, inter alia; he suffered adverse actions subsequent to the protected activity and a causal link exists between the protected activity and the adverse actions.

81. As damages, Plaintiff has suffered lost income, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

82. Because the actions of Defendants were willful, wanton or, at least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT II: FMLA

For his second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

83. The matters alleged above constitute retaliation for Plaintiff's use of FMLA-qualifying medical leave in violation of the Family and Medical Leave Act ("FMLA").

84. Plaintiff was entitled to medical leave because he worked for Defendants, entities with more than 50 employees within a 75 mile radius, for more than one (1) year and for more than 1,250 hours within the one year prior to his need for leave.

85. Plaintiff suffered from a serious health condition requiring continuing treatment by a medical provider.

86. Defendants retaliated against Plaintiff for his use of FMLA-qualifying medical leave. Plaintiff engaged in protected activity by requesting and taking FMLA-qualified leave; he was terminated and not re-hired; and a causal connection exists between the protected activity and the adverse actions. Indeed, records from the OESC reflect that Defendants' stated reason for terminating Plaintiff was his "Leave of Absence," i.e., his use of FMLA leave.

87. As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries and is entitled to recover all damages or other equitable relief allowed by law, including, but not limited to, lost wages, past and future, liquidated damages, based on the willfulness of Defendants' violation of the FMLA, attorneys' fees and costs.

## COUNT III: ADEA

For his third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

88. The matters alleged above constitute violations of the ADEA in the form of age discrimination.

89. Plaintiff is entitled to relief for age discrimination because he is over age 40; he was qualified for his job; he suffered adverse employment actions, including *inter alia* being denied credit toward sales quotas and commissions to which he was entitled, was discharged; and his job duties were not eliminated after his termination. Moreover, a significantly younger individual began performing Plaintiff's job after he was terminated. And, his termination reason was pretextual.

90. Plaintiff is further entitled to relief for age discrimination because he is over age 40; he applied for an available position for which he was qualified (i.e., his former position which he successfully performed for nearly two years); and he was rejected under circumstances giving rise to an inference of unlawful age discrimination. A significantly younger individual began performing Plaintiff's job.

91. As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991. Plaintiff is also entitled to liquidated damages based on Defendants' willful misconduct.

**COUNT IV: 42 U.S.C. § 1981**

For his fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

92. The matters alleged above constitute violations of 42 U.S.C. § 1981 in the form of race discrimination and retaliation.

93. Plaintiff is entitled to relief for race discrimination because he is Hispanic; he

suffered adverse employment actions, including *inter alia* being denied credit toward sales quotas and commissions to which he was entitled; and similarly-situated employees were treated differently.

94. Plaintiff is also entitled to relief for race discrimination because he is Hispanic; he was qualified for his job; he was terminated; and his job duties were not eliminated after his termination. And, his termination reason was pretextual.

95. Plaintiff is further entitled to relief for race discrimination because he is Hispanic; he applied for an available position for which he was qualified (i.e., his former position which he successfully performed for nearly two years); and he was rejected under circumstances giving rise to an inference of unlawful race discrimination.

96. Plaintiff is also entitled to relief for retaliation because Plaintiff engaged in protected opposition to race-based discrimination; he suffered adverse actions subsequent to the protected activity; and a causal link exists between the protected activity and the adverse actions.

97. As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by 42 U.S.C. § 1981.

98. Because the actions of the Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by 42 U.S.C. § 1981.

**COUNT V: TITLE VII (Race)**

For his fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

99. The matters alleged above constitute violations of Title VII of the Civil Rights Act in the nature of race discrimination.

100. Plaintiff is entitled to relief for race discrimination because he is Hispanic; he suffered adverse employment actions, including *inter alia* being denied credit toward sales quotas and commissions to which he was entitled; and similarly-situated employees were treated differently.

101. Plaintiff is also entitled to relief for race discrimination because he is Hispanic; he was qualified for his job; he was terminated; and his job duties were not eliminated after his termination. And, his termination reason was pretextual.

102. Plaintiff is further entitled to relief for race discrimination because he is Hispanic; he applied for an available position for which he was qualified (i.e., his former position which he successfully performed for nearly two years); and he was rejected under circumstances giving rise to an inference of unlawful race discrimination.

103. As damages, Plaintiff has suffered lost income, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

104. Because the actions of Defendants were willful, wanton or, at least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages..

**COUNT VI: ERISA**

For his sixth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

105. The matters alleged above constitute interference with Plaintiff's rights protected by ERISA.

106. Defendants are prohibited from discharging or otherwise discriminating against a plan participant "for the purposes of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. §1140.

107. Plaintiff is entitled to relief because Defendants engaged in prohibited conduct (i.e., Plaintiff's termination and failure to rehire), and Defendants engaged in such conduct for the purpose of interfering with Plaintiff's ERISA-protected rights.

108. As a result, Plaintiff has sustained loss and damages.

109. As damages, Plaintiff seeks all damages available under federal law, including but not limited to back pay, front pay, attorneys' fees and costs.

**COUNT VII: BREACH OF CONTRACT**

For his seventh cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

110. The above-described actions constitute a breach of contract.

111. Plaintiff is entitled to relief because Plaintiff and Defendants formed a contract, under which Defendants agreed to pay Plaintiff sales commissions, as described above;

Defendants breached the contract by failing to pay Plaintiff commissions as promised; and Plaintiff suffered damages as a direct result of the breach.

112. As damages, Plaintiff is entitled to all relief allowed by state law.

## COUNT VIII: UNPAID WAGES

For his eighth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

113. Plaintiff has not been paid for commissions, i.e., wages, agreed upon between Plaintiff and Defendants which were earned and due.

114. The failure to pay monies earned (as described herein) is a violation of Oklahoma state law, Okla. Stat. tit. 40, §165.1, *et seq*.

115. As such, Plaintiff is entitled to all damages provided for by law, including *inter alia* attorneys' fees and costs. And, based on the willful violation of the law, Plaintiff is entitled to liquidated damages.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendants and assess lost wages, including back pay and front pay, actual, compensatory, emotional distress damages, liquidated damages and punitive damages, together with pre- and post-judgment interest, costs, attorney's fees, all other damages available under federal law, and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 13TH DAY OF NOVEMBER, 2026.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
SHANNON C. HAUPT, OBA #18922
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800 (telephone)
(405) 239-3801 (facsimile)
leonardjb@leonardlaw.net
haupts@leonardlaw.net

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**